JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Leo Biggs appeals from his convictions and the sentence imposed after the trial court found him guilty of drug possession, drug trafficking, and possession of criminal tools.
 {¶ 2} Biggs presents five assignments of error in which he argues his drug convictions are unsupported by the weight of the evidence, his criminal tools conviction was unsupported by sufficient evidence, and his sentence must be vacated and remanded for resentencing based upon the mandate given in Statev. Foster, 109 Ohio St.3d 1, 2006-Ohio-856.
 {¶ 3} This court cannot agree that Biggs' convictions were improper; therefore, they are affirmed. However, the state concedes Biggs' argument that his sentence falls under Foster.
Consequently, his sentence is vacated and the matter is remanded to the trial court for a resentencing hearing.
 {¶ 4} Biggs' convictions stem from an investigation of his activities that began in February 2005. James Cudo and Martina Latessa, Cleveland police detectives assigned to the Sixth District Vice Unit, were traveling in their undercover vehicle near the intersection of East 143rd Street and Aspinwall when they noticed Biggs gesturing, trying to "flag [them] over."[1]
 {¶ 5} They believed his actions indicated an offer to sell drugs to passersby. However, the detectives at that time were on another assignment; therefore, they could not stop to investigate. Cudo made a negative gesture of his own to decline Biggs' gesture, but both he and Latessa noted his face.
 {¶ 6} A few days later, on February 23, 2005, Cudo and Latessa made an arrest of a person who, in order to obtain some consideration from them on the charges, offered to act as a confidential informant ("CI"). The CI indicated he could call a crack cocaine supplier, street-named "Man," and arrange a purchase. Latessa permitted the CI to use her cellular telephone to call "Man" to make the arrangement.
 {¶ 7} Once the purchase was arranged, Cudo tracked down the owner of that telephone number. The number was listed to Leo Biggs. In turn, Cudo then obtained Biggs' driver's license photograph. When the detectives saw it, they realized Biggs was the man whom they had noticed at East 143rd Street and Aspinwall Avenue.
 {¶ 8} That same evening, using an unmarked police car, Latessa picked up the CI from his home. She checked him for money and drugs, handed him fifty dollars in marked currency, and drove him to the agreed-upon meeting place in the parking lot of a bar located at East 159th Street and Saranac Avenue. Cudo and a few other detectives already were waiting nearby.
 {¶ 9} Upon their arrival, the CI called Biggs, who emerged from the bar a few minutes later and approached Latessa's car. The CI introduced Latessa to Biggs as his wife. Latessa watched as the CI handed twenty dollars of the money to Biggs and received in return a rock of crack cocaine which weighed .38 grams. The CI indicated that if the drug was pure, Biggs might have a steady customer.
 {¶ 10} Two days later, on February 25, 2005, Latessa called Biggs to arrange her own purchase. Biggs told her to meet him that evening near a bar located at East 170th Street and St. Clair Avenue. Latessa drove the same car she had used on the first occasion. Cudo and some of his colleagues monitored her safety from a distance.
 {¶ 11} This time, Biggs arrived at the location driving a maroon-colored minivan. He told Latessa to pull up to his door to make the transaction through the window. Latessa handed him fifty dollars and received rocks of crack cocaine that weighed 1.38 grams.
 {¶ 12} Although it was dark, Latessa could see Biggs had passengers; she also heard some of them express an interest in buying the unmarked police car she drove. Latessa indicated she would consider trading it for drugs and let Biggs know her decision.
 {¶ 13} On March 2, 2005 Latessa telephoned Biggs about the trade; this time, she tape-recorded the call. Biggs declined the deal. A little while later, Latessa called again to ask if she could buy another fifty-dollars-worth of crack. Biggs told her to meet him again at the bar's parking lot.
 {¶ 14} By that time, the detectives decided to conduct a "buy bust" operation. Thus, when Biggs arrived with a male companion, Latessa made one more purchase of 1.11 grams of crack cocaine for fifty dollars, which she tape-recorded, before her colleagues moved in to arrest both men. Biggs' subsequent attempt to dispose of the marked money proved unsuccessful. When he was subjected to a pat-down search, he was found to have over four thousand dollars in his pants pocket.
 {¶ 15} Biggs ultimately was indicted in this case on eleven counts. Counts one, three and six pertained to the February 23, 2005 transaction and charged him with one count of possession of and two counts of trafficking in less than one gram of crack cocaine. Counts two, four and seven pertained to the February 25, 2005 transaction and charged him with one count of possession of and two counts of trafficking in crack cocaine in an amount of between one and five grams.
 {¶ 16} Counts eight, nine, and ten pertained to the March 2, 2005 "buy bust." Biggs was charged with one count of possession of and two counts of trafficking in crack cocaine in an amount between one and five grams. Additionally, Biggs was charged with one count of possession of criminal tools for the money found on his person upon his arrest.
 {¶ 17} Count five pertained to the debate with Latessa about the car, and charged him with offering to sell between twenty-five and one hundred grams of crack cocaine. After the state presented its case at trial, the court granted Biggs' motion for acquittal on this count.[2]
 {¶ 18} Biggs executed a waiver of his right to a jury trial, and stipulated to the results of the laboratory analysis of the drugs. Upon hearing the testimony of the five police detectives involved in the investigation, the trial court found Biggs guilty of the remaining counts. The court obtained a presentence report before sentencing Biggs to concurrent terms of incarceration of eight months on each count.
 {¶ 19} Biggs presents the following five assignments of error on appeal.
 {¶ 20} "I. The guilty verdicts on counts I, possession of drugs, and counts III and IV, drug trafficking, were against the manifest weight of the evidence.
 {¶ 21} "II. The guilty verdicts on count II, possession of drugs, [and] count IV (sic), drug trafficking, were against the manifest weight of the evidence.
 {¶ 22} "III. The guilty verdicts in count VIII, possession of drugs, and counts IX and X, drug trafficking, were against the manifest weight of the evidence.
 {¶ 23} "IV. The trial court erred in denying the appellant'sRule 29 motion for judgment of acquittal, with reference to count XIII, possession of criminal tools, since the state's evidence was insufficient to legally support the conviction.
 {¶ 24} "V. The trial court erred when it relied on RevisedCode of Ohio, [Section] 2929.12 and Revised Code of Ohio,[Section] 2929.13 in determining that a prison sentence was the appropriate sentence in this case."
 {¶ 25} With respect to his first, second and third assignments of error, Biggs argues Latessa's testimony concerning each of the three transactions was not so compelling that it could support proof of his guilt of the drug possession and trafficking counts. Biggs, therefore, apparently concedes the evidence presented by the state met the legal test of sufficiency, thus establishing proof of the elements of these offenses. State v. Dennis, 79 Ohio St.3d 421, 1997-Ohio-372.
 {¶ 26} The test to be applied when reviewing a claim that a conviction is against the manifest weight of the evidence was set forth in State v. Martin (1983), 20 Ohio App.3d 172. The test is "much broader" than the test for sufficiency; i.e., this court reviews the entire record to determine whether in resolving any conflicts in the evidence, the trier-of-fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." Id., at 175.
 {¶ 27} Moreover, this court must remain mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the trier-of-fact to assess. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 28} Despite Biggs' characterization of Latessa's testimony as unreliable, the record reflects she described each transaction in a cogent manner. Latessa stated that on each occasion, Biggs arrived at her unmarked car as arranged. He took money first from the CI, and then twice from her; in return, he provided a usable amount of drugs; each time, the amount was consistent with the price which had been handed to him.
 {¶ 29} Her testimony was corroborated not only by the observations of her colleagues, but also by the tape-recorded conversations she had with Biggs. Under the circumstances, the trial court acted within its prerogative to believe Biggs was guilty of three counts of possession of and six counts of trafficking in crack cocaine. State v. Studgions (May 31, 2001), Cuyahoga App. No. 78307.
 {¶ 30} Accordingly, Biggs' first, second and third assignments of error are overruled.
 {¶ 31} Biggs argues in his fourth assignment of error that his conviction for possession of criminal tools cannot stand. He contends the state failed to present sufficient evidence to establish the elements of that offense; therefore, the trial court incorrectly denied his motion for acquittal on this count.
 {¶ 32} A defendant's motion for acquittal should be denied if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the offense has been proven beyond a reasonable doubt. State v. Dennis,
supra; State v. Bridgeman (1978), 55 Ohio St.2d 261. The trial court is required to view the evidence presented in a light most favorable to the prosecution. State v. Martin, supra. Moreover, circumstantial evidence alone is sufficient to prove an element of an offense. State v. Jenks (1991), 61 Ohio St.3d 259.
 {¶ 33} Count thirteen charged that Biggs "unlawfully possessed or had under his control a[n] * * * article with purpose to use it criminally, to wit: money, and such * * * article was intended for use in the commission of a felony." According to Latessa, Biggs arrived at the prearranged location with drugs. In exchange for the illegal substance he provided, he received money. He then left, since the transaction was concluded. Upon his arrest, Biggs had over four thousand dollars in his pocket.
 {¶ 34} The trial court commented that the evidence demonstrated this same scenario occurred on three different occasions; therefore, a reasonable "trier of fact could find [Biggs] was a drug dealer, and that was his stash of money in his pocket." Since the trial court properly assessed the evidence, it did not err in denying Biggs' motion for acquittal on this count.State v. Pavlick, Cuyahoga App. No. 81925, 2003-Ohio-6632.
 {¶ 35} Accordingly, Biggs' fourth assignment of error also is overruled.
 {¶ 36} Biggs argues in his fifth assignment of error that the trial court erred in imposing a sentence pursuant to statutes held to be unconstitutional in State v. Foster, supra.[3]
The state concedes this argument. Therefore, this assignment of error is sustained on this basis.
 {¶ 37} The record reflects the trial court herein imposed sentences of more than the minimum terms pursuant to R.C.2929.14(B), (C) and (E). As this court recently observed, the Ohio Supreme Court held in Foster that those sections of the sentencing code violated Blakely v. Washington (2004),542 U.S. 296. State v. Jones, Cuyahoga App. Nos. 87262, 87263,2006-Ohio-4100, ¶ 6; State v. Reid, Cuyahoga App. No. 87290,2006-Ohio-3978, ¶ 5.
 {¶ 38} Foster determined that in cases in which the trial court relied upon unconstitutional statutory provisions in pronouncing, the sentence must be vacated and the matter remanded for resentencing. State v. Jones, supra, ¶ 9. The trial court "shall consider" on remand "those portions of the sentencing code unaffected by Foster, and [may] impose any sentence within the appropriate felony range * * *." Id.
 {¶ 39} Accordingly, Biggs' fifth assignment of error is sustained.
 {¶ 40} Biggs' convictions are affirmed.
 {¶ 41} His sentence is vacated and this case is remanded for a resentencing hearing consistent with Foster.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, P.J. and Calabrese, Jr., J. concur.
[1] Quotes indicate testimony given at trial.
[2] The trial court additionally dismissed schoolyard specifications attached to counts three, six, nine and ten.
[3] Biggs cites the wrong statutes in his fifth assignment of error.